UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:12-CR-00085-TBR

UNITED STATES OF AMERICA                                                                              Plaintiff

v.

KELVIN B. WATKINS                                                                                    Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Kelvin B. Watkins' Motion to Suppress. (Docket No. 15.) Watkins seeks suppression of all evidence obtained by law enforcement officers following a stop and subsequent search of his person and automobile on August 22, 2011. Watkins argues that the stop of his vehicle was warrantless, nonconsensual, and made without probable cause to believe he had been, was, or was about to be engaged in criminal activity. (Docket No. 15, at 1.)

The Court conducted a suppression hearing in this matter on February 21, 2013. The Defendant, Kelvin Watkins; attorney Don Meier, standing in on Watkins' behalf for Watkins' attorney Scott Wendelsdorf; and Assistant United States Attorney Micah Reyner were present. The United States presented evidence through the testimony of Louisville Metropolitan Police Detectives Antoine Frye and Elizabeth Rouff. Watkins presented his evidence through a cross-examination of Detectives Frye and Rouff.

After the February 21 hearing, the Court ordered additional briefing on the suppression issue. (Docket No. 21.) The United States and Watkins respectively have filed briefs in opposition to, or in support of, suppression. (Docket Nos. 24; 26.) This

matter is now ripe for adjudication. Based on the Court's findings of fact and discussion that follows, the Court will DENY Watkins' Motion to Suppress. (Docket No. 15.)

## FINDINGS OF FACT

In August 2011, Detective Rouff and another detective met with an individual who had contacted the Louisville Metropolitan Police Department expressing interest in becoming a confidential informant. Detective Rouff followed the standard procedure for investigating and signing up the individual as a registered informant, which included, among other things, performing a criminal background check and recording the informant's personal information.

On August 18, 2011, the informant contacted Detective Rouff and provided detailed information regarding a narcotics sale about to take place, including the specific apartment location, a physical description of the person who would be leaving the apartment, a vehicle description, the specific time the person would be leaving the apartment, and an amount of narcotics that could be expected to be seized by stopping that person. Detective Rouff conducted surveillance of the apartment and, based on the informant's tip, stopped the person identified and seized the exact narcotics indicated by the informant. That tip allowed Louisville Police to develop a second confidential informant. The informant also provided specific information on August 18 regarding another individual, David Lewis, which led to Lewis' arrest and subsequent conviction on charges relating to cocaine trafficking. Thus, Detective Rouff had confirmed the accuracy of several tips received from this informant prior to Watkins' arrest on August

22. Both Detectives Frye and Rouff acknowledged that the informant received monetary compensation for his tips.

The informant then contacted Detective Rouff the day of Watkins' arrest, stating he knew someone who was selling narcotics and offering to set up a deal. Detective Rouff was off duty that day, but put the informant in contact with Detective Frye. The informant then contacted Detective Frye, who proceeded to meet the informant. The informant relayed to Frye that he knew an individual he could purchase "dope" from. From Detective Frye's unmarked automobile, the informant placed several calls on his own cellular phone to arrange the deal, eventually agreeing to meet the target individual at a Walgreen's. The informant did not place the call on speaker phone, and Detective Frye was not privy to anything said by the individual whom the informant called. The informant remained with Detective Frye after placing the call until the time of Watkins' arrest.

Detective Frye and the informant parked across the street where the two had a clear line-of-sight view of the Walgreen's parking lot. Detective Frye called approximately five other officers to assist. Between 30 minutes and an hour after positioning himself across from the Walgreen's, the informant positively identified a black Chevrolet Malibu with dark tinted windows[1] as the target individual's vehicle when it pulled into the Walgreen's lot. It was approximately 7:00 p.m. and still light outside when the informant identified the vehicle. The informant did not identify any other vehicles as being the target vehicle during the time he and Detective Frye waited across the street.

---

[1] Detective Frye testified that in his experience, drug dealers frequently drove vehicles with dark tinted windows.

At that time, Detective Frye had not been provided a name or physical description for the target individual, nor did the informant state how many individuals would be coming. After the informant identified the vehicle, Detective Frye radioed to the other officers to move in and block the vehicle in. One of the other detectives relayed to Detective Frye that upon approaching the vehicle he observed the driver, later identified as Watkins, raise up and then sit back in the driver's seat. Two other individuals were also in the vehicle.

After Watkins was removed from the vehicle, the other officers reported viewing a handgun in plain view in the driver's seat. A subsequent search of the vehicle resulted in the seizure of the gun, along with a quantity of crack cocaine located in the driver's side door handle next to Watkins' driver's license. A total of four cellular phones were also found in the vehicle, as well as a quantity of marijuana. A search of Watkins' person further resulted in the seizure of $880 cash.

Detective Frye acknowledged that the officers did not have a warrant to arrest Watkins. He also acknowledged that he did not witness a drug transaction take place, but rather moved in on the vehicle once it was positively identified by the informant. The vehicle driven by Watkins was determined to be a rental car from Hertz, but police did not identify who rented the vehicle or when it was rented. Detective Frye testified that in his experience as a detective, drug dealers frequently use rental cars because those vehicles cannot be seized. He also testified that rental cars often cannot be directly tied to them because they have other individuals rent the vehicles for them. Detective Frye further testified that in his experience, drug dealers frequently drove vehicles with dark tinted windows.

DISCUSSION

Watkins' Motion to Suppress presents a single issue[2]:  Whether police had probable cause to believe Watkins was about to be engaged in criminal activity when they stopped his vehicle?  In its posthearing brief, the United States argues that the informant's tip combined with police observations provided probable cause to search the vehicle Watkins was driving and that the probable cause to search the vehicle is also sufficient to arrest Watkins without a warrant.  (*See* Docket No. 24.)

The Court sees an additional issue not raised or addressed directly by either Watkins or the United States:  whether, even if police lacked probable cause to arrest Watkins at the moment the confidential informant identified his vehicle, police nonetheless had reasonable suspicion to conduct a brief investigatory stop of Watkins' vehicle, which then ripened into probable cause?  Although this issue was not briefed by either party, the Court feels that, based on the testimony and evidence developed at the suppression hearing, this issue deserves discussion.  The Court is further satisfied that its findings of fact above, which reflect that testimony and evidence, form a sufficient and proper basis for the Court to decide this issue.  Accordingly, the Court will first address the probable cause issue raised by Watkins before turning to the issue of reasonable suspicion.

---

[2] In his posthearing brief, Watkins asserts that as a result of the testimony and evidence developed during the suppression hearing, there are additional search and seizure issues that should be raised.  (*See* Docket No. 26, at 3.)  Watkins outlines these issues but states that they will be raised in a separate motion.  Accordingly, the Court need not discuss these issues here.

I.      **Probable Cause**

Watkins, in his Motion to Suppress and posthearing brief, argues that because police had neither a warrant nor probable cause, the stop, search, and seizure of Watkins and his vehicle was unconstitutional and all physical evidence obtained as a result must therefore be excluded. Watkins has not challenged the credibility of Detectives Frye or Rouff's testimony. Thus, whether police had probable cause turns primarily on the weight afforded the confidential informant.

The Fourth Amendment protects the "right of people to be secure in their persons . . . against unreasonable seizures." "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). The Sixth Circuit defines probable cause as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999). According to the Supreme Court, it requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983). Additionally, the "automobile exception" permits police to stop and search a vehicle without a warrant if police have probable cause to believe the vehicle contains contraband or evidence of criminal activity. *E.g.*, *United States v. Lyons*, 687 F.3d 753, 770 (6th Cir. 2012).

When an informant's tip is used to establish probable cause, the Court must assess whether probable cause necessary to justify the arrest existed based on the "totality of the circumstances." *Wolfe v. Perry*, 412 F.3d 707, 717 (6th Cir. 2005)

(quoting *Gates*, 462 U.S. at 230-31). Probable cause to arrest may be based solely on an informant's tip "if the tip appears reliable under the totality of the circumstances." *United States v. Cooper*, 1 F. App'x 399, 403 (6th Cir. 2001) (citing *Gates*, 462 U.S. at 230). And "[u]nlike a tip from an anonymous informant, a 'tip from a known informant whose reputation can be assessed and who can be held responsible if [his] allegations turn out to be fabricated' is far more trustworthy." *United States v. Tillman*, 404 F. App'x 949, 952 (6th Cir. 2010) (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)), *cert. denied*, 131 S. Ct. 1541 (2011). "[I]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." *Smith*, 182 F.3d at 483.

In this case, the information relied upon by police was not an "uncorroborated tip of an unknown informant." *Cf. United States v. Perkins*, 994 F.2d 1184, 1188 (6th Cir. 1993). Rather, the information leading to Watkins' arrest was provided by a known source. *See Tillman*, 404 F. App'x at 952 (finding that a known informant is inherently more credible because the informant can be held accountable for providing false information); *United States v. Couch*, 367 F.3d 557, 560-61 (6th Cir. 2004) (same). Although he had been a confidential informant only a short time, he had provided detailed information, all of which had been verified as accurate, on two occasions in the week prior to Watkins' arrest.[3] Based on his providing information several times very

---

[3] The Court notes that although Detective Frye had no prior experience with this informant, Detective Rouff did have experience with this informant and knowledge of his reliability, which is properly imputed to Detective Frye. *See, e.g.*, *Willis v. Neal*, 247 F. App'x 738, 742-43 (6th Cir. 2007) (citing *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989); *United States v. Killebrew*, 594 F.2d 1103, 1105 (6th Cir. 1979)) ("[P]robable cause may be established from the collective knowledge of the police rather than solely from the officer who made the arrest.").

recently that proved both accurate and fruitful, the Court finds the informant's reliability reasonably strong to substantiate his credibility.

The police had more than just the informant's reliability, however. The informant was a registered confidential informant for the Louisville Police, meaning he had been subjected to a criminal background check and his identity was known to police. As the Sixth Circuit recently stated, "Unlike a tip from an anonymous informant, a 'tip from a known informant whose reputation can be assessed and who can be held responsible if [his] allegations turn out to be fabricated' is far more trustworthy." *Tillman*, 404 F. App'x 949, 952 (6th Cir. 2010) (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000))

Furthermore, the fact that the informant set up the drug transaction himself using his own contact supports a showing as to the informant's basis of knowledge. And although police corroboration may not be necessary when a tip comes from a reliable source having a personal basis of knowledge, Detective Frye nonetheless was able to verify some of the informant's tip. Detective Frye was with the informant when the informant placed several calls arranging to meet and purchase narcotics at the Walgreen's.[4] Within about an hour (and having made no false identifications of other vehicles during that time), the informant immediately and definitively identified the

---

[4] Watkins argues that probable cause is lacking in part because Detective Frye only overheard the informant's side of those calls and heard no discussion of any particular type of illegal narcotic. Certainly, probable cause no doubt would be bolstered had the informant's calls been made over speaker phone and had Detective Frye heard specific talk of drugs. *See United States v. Steppello*, 664 F.3d 359, 364 & n.6 (2d Cir. 2011) (noting that "[o]ne would not expect two individuals engaged in the sale of illegal substances to speak in the traditional terms of commerce," and finding error in the district court's discounting the probable cause significance of a phone call between an informant and the defendant merely because of "its brevity, the inability to hear what the defendant said, and the lack of any reference to a drug sale"). Thus, Detective Fry's observation of the informant's calls, while insufficient to establish probable cause standing alone, nonetheless is properly one more piece of the probable cause analysis under the totality of the circumstances.

vehicle driven by Watkins as soon as it entered the Walgreen's parking lot. Detective Frye was able to observe the informant's real-time identification of the vehicle and assess the veracity of the informant's statement of identification. Detective Frye also observed that the vehicle had tinted windows, which in his experience was consistent with vehicles frequently used by drug dealers. Thus, Detective Frye not only received a tip from a reliable informant, he also went to the arranged location with that informant, and then witnessed the informant's tip come to fruition as the informant positively identified the vehicle driven by Watkins as that of the target individual who was coming to meet him.

      The Court concludes that, under the totality of the circumstances, at least three considerations weigh against Watkins and in favor of probable cause: (1) the reliability of the confidential informant, (2) the basis of the confidential informant's knowledge, and (3) some degree of police corroboration of the informant's tip. This analysis applies both to the issue of probable cause to arrest Watkins and probable cause to search the vehicle he was driving. Based upon Detectives Fry and Rouff's testimony, the Court is satisfied that, under the totality of the circumstances, probable cause existed to believe both that Watkins was about to be engaged in criminal activity when the police stopped his vehicle and that the vehicle Watkins was driving would contain contraband or evidence of criminal activity. Because no violation of Watkins' Fourth Amendment rights occurred by either his arrest or the search of the vehicle he was driving, Watkins' Motion to Suppress must be denied.

## II. Reasonable Suspicion

The Court further finds that even assuming police lacked probable cause to arrest Watkins at the moment the confidential informant identified his vehicle, they certainly had reasonable suspicion to conduct a brief investigatory *Terry* stop of Watkins' vehicle. And based on the evidence elicited at the suppression hearing, that reasonable suspicion thereafter ripened into probable cause to arrest Watkins and search his vehicle.

An officer may conduct a brief investigatory stop "only if he 'has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'" *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010) (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)). "Reasonable suspicion" must be based on specific, objective facts. *Id.* (citing *Brown v. Texas*, 443 U.S. 47, 51 (1979)). Police similarly may effect a traffic stop absent probable cause of a civil infraction if they possess a reasonable suspicion of criminal activity. *Lyons*, 687 F.3d at 763 (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). Thus, "[t]he reasonableness of a traffic stop is measured by the same standards set forth for investigatory stops in *Terry v. Ohio* and its progeny." *Id.* (citation omitted).

Akin to the analysis for probable cause discussed above, "[r]easonable suspicion must be considered under the totality of the circumstances, considering all of the information available to law enforcement officials at the time." *Id.* (internal quotation marks omitted) (quoting *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007); *Feathers v. Aey*, 319 F.3d 843, 849 (6th Cir. 2003)). Where reasonable suspicion exists to support the initial stop of a vehicle, the same principles that define the scope of

reasonableness under *Terry* also apply to any subsequent detention or search resulting from that stop. *Id.*; *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). "The degree of a traffic stop's intrusion must be reasonably related in scope to the situation at hand, as judged by examining the reasonableness of the officer's conduct given his suspicions and the surrounding circumstances." *Lyons*, 687 F.3d at 764 (citing *United States v. Davis*, 430 F.3d 345, 353-54 (6th Cir. 2005)). Furthermore, the reasonable suspicion to support a traffic stop may ripen into probable cause to search the vehicle or to arrest based on what happens during the stop and the actions of the vehicle's occupants. *Id.* (citing *United States v. Craig*, 198 F. App'x 459, 463 (6th Cir. 2006)).

These issues were not addressed directly by the parties at the February 21 hearing or in their posthearing briefs. Nonetheless, at the suppression hearing, Detective Frye articulated clear and specific facts to support his suspicion that the vehicle driven by Watkins would contain illegal drugs. Thus, the Court finds that even assuming the totality-of-the-circumstances analysis discussed above would fall short of probable cause, police nonetheless had reasonable suspicion to justify a brief investigatory stop of the vehicle. Police also were justified in removing Watkins from the vehicle. Detective Frye testified that upon initially approaching the stopped vehicle, one of the other detectives observed Watkins raise up and then sit back in the driver's seat.[5] Based on the information available to police and on the detective's observation of Watkins' movements within the car, it was not unreasonable to expand the scope of the stop to remove Watkins from the vehicle and detain him briefly. Detective Frye further testified that after Watkins was removed from the vehicle, the other officers reported

---

[5] Though hearsay, this information is admissible in a suppression hearing to determine probable cause and reasonable suspicion. *E.g.*, *United States v. Stepp*, 680 F.3d 651, 668 (6th Cir. 2012); *Killebrew*, 594 F.2d at 1103.

viewing a handgun in plain view in the driver's seat and observing a quantity of crack cocaine in the driver's side door handle. Therefore, upon removing Watkins from the vehicle and observing those items, the officers' reasonable suspicion to support the initial stop and subsequent removal of Watkins from the vehicle no doubt ripened fully into probable cause.

Watkins asserts that Detective Fry's testimony made clear that the handgun and crack cocaine were found as a result of searching the vehicle after Watkins was secured. Thus, he reasons that these items cannot be considered to have been discovered in "plain view" because it was the unlawful seizure that led to their discovery. (Docket No. 26, at 6.) The Court disagrees. Watkins correctly states that the United States must prove three conditions to establish "plain view": (1) that police did not violate Watkins' Fourth Amendment rights in arriving at the place where the evidence could be plainly seen, (2) that police had a lawful right of access to the evidence itself, and (3) that evidence was not only in plain view but also that its incriminating character was immediately apparent. *See Horton v. California*, 496 U.S. 128, 136 (1990). In light of the Court's foregoing analysis, Watkins' argument that the plain-view exception is inapplicable because police violated his Fourth Amendment rights in arriving at the handgun and drugs in the door handle must fail. Moreover, the Court is satisfied that the testimony and evidence developed at the suppression hearing established that police had a lawful right of access to those items and that the incriminating character of those items was immediately apparent.

Therefore, even assuming police lacked probable cause to arrest Watkins at the moment the confidential informant identified his vehicle, under the totality of the

circumstances they certainly had reasonable suspicion to conduct a brief investigatory stop of Watkins' vehicle, which, based on the evidence elicited at the suppression hearing, thereafter ripened into probable cause to arrest Watkins and search his vehicle. Thus, even if police initially lacked probable cause, there was no violation of Watkins' Fourth Amendment rights by his eventual arrest or the search of the vehicle he was driving. For this reason also, Watkins' Motion to Suppress must be denied.

## CONCLUSION

For the foregoing reasons, the Court finds that police had probable cause to arrest Watkins and search his vehicle based on the totality of the circumstances. Further, even if police initially lacked probable cause, they nonetheless had reasonable suspicion to justify a brief investigatory stop, which properly ripened into probable cause such that no Fourth Amendment violation occurred.

Therefore, having considered the testimony and evidence presented during the suppression hearing held February 21, 2013, and the subsequent briefing on this matter, and being otherwise sufficiently advised;

IT IS HEREBY ORDERED that Defendant Kelvin B. Watkins' Motion to Suppress, (Docket No. 15), is DENIED.

Date:

cc: AUSA
    Counsel for Defendant, Kelvin B. Watkins